COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Fitzpatrick, Judges Benton, Willis, Elder,
          Bray, Annunziata, Bumgardner, Frank, Humphreys,
          Clements and Agee
Argued at Richmond, Virginia


ANTWOIN RENARD McNAIR
                                              OPINION BY
v.   Record No. 1106-00-1          JUDGE ROBERT J. HUMPHREYS
                                             MARCH 19, 2002
COMMONWEALTH OF VIRGINIA


UPON A REHEARING EN BANC

FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
        Frederick H. Creekmore, Judge

    Randolph D. Stowe for appellant.

    Donald E. Jeffrey, III, Assistant Attorney
    General (Randolph A. Beales, Attorney
    General, on brief), for appellee.


    Antwoin Renard McNair contends the trial court violated his

rights under the Sixth Amendment by requiring him to proceed to

trial without counsel.  A panel of this Court, with one judge

dissenting, held that appellant waived his right to counsel.

See McNair v. Commonwealth, 35 Va. App. 587, 546 S.E.2d 756

(2001).  We stayed the mandate of that decision and granted

rehearing en banc.  For the reasons that follow, we reverse the

convictions and remand for a new trial.

I.  Background

A grand jury indicted appellant on felony charges of malicious wounding and abduction of his wife.  A warrant charged appellant with the misdemeanor of brandishing a firearm.  On October 29, 1999, prior to the commencement of trial, appellant's court-appointed attorney informed the trial judge that appellant wanted a continuance.  After appellant explained his reasons for the request, the trial judge denied the continuance.  During the arraignment, appellant's attorney informed the judge that appellant wanted a jury trial.  The judge granted that request and set the trial to commence December 6, 1999.

Several weeks prior to the December trial, appellant's court-appointed attorney filed a motion to withdraw, alleging "an irretrievable breakdown in communication."  The trial judge granted the motion and appointed another attorney to represent appellant.  She was appellant's fifth attorney during the course of the proceedings.  The trial judge admonished:  "I will appoint your last lawyer, Mr. McNair.  Do you understand that this is your last lawyer[?]"

The judge set a new trial date for January 25, 2000.  After conferring with appellant, his new attorney filed motions to compel discovery, for a subpoena duces tecum, and to suppress evidence.  The trial was again continued and ultimately held on March 6, 2000.  When the trial court called appellant's case on

that date and asked if the parties were ready to proceed, appellant's court-appointed attorney said she was ready for trial. She indicated, however, that appellant wanted to address the court "prior to starting the trial." Appellant then spoke extensively about the absence of information he believed was necessary to be produced for his defense "so that [he] could get a fair trial," and about his objection to the prosecutor using his thirteen-year-old daughter as a witness.

Reiterating these issues during the ensuing re-arraignment, appellant indicated that "information for [his] defense is not here" and that he had not had sufficient time to discuss his defenses with his attorney. Appellant's attorney disagreed and said that she had advised appellant, that he did not want to accept her advice, and that she had "jumped through all of the hoops" appellant imposed upon her. She stated: "At this point, I have to protect myself, . . . I'm going to make a motion to withdraw as counsel." The prosecutor immediately asked "if [appellant] could proceed pro se and leave [appellant's attorney] as advice counsel."

When the judge asked for appellant's response to these matters, appellant again indicated he needed other information to prove his wife was "capable of lying under oath." The trial judge then ascertained from appellant's appointed attorney that she had discussed the case with appellant, that she had advised

him of the elements of the offense the prosecutor had to prove, and that she had consulted with appellant on numerous occasions. The judge granted appellant's attorney's motion to withdraw, but asked her "to standby because he has some questions that he [will] need to ask your advice on and we'll go ahead and proceed <u>pro se</u> based on the evidence that I have before me."  The trial court stated to McNair:

> [s]he's your fifth attorney, and we have to
> get the matter heard, and we can't keep
> going through different attorneys, and it
> sounds like to me that she's made a
> reasonable effort to provide you with a
> defense.  If you have rejected that, then we
> have to get the case pro se.

Proceeding with the arraignment, the judge asked the following:

> [JUDGE]:  The Court has heard what you said.
> That matter is on the record.  At this
> point, I'm not going to deny [your daughter]
> an opportunity to testify if the
> Commonwealth presents her as a witness.
>
> Have you entered your plea of not guilty
> freely and voluntarily?
>
> [APPELLANT]:  Yes.
>
> [JUDGE]:  And are you ready for trial today?
>
> [APPELLANT]:  Without an attorney?
>
> [JUDGE]:  Yes, sir.
>
> [APPELLANT]:  No, I'm not.
>
> [JUDGE]:  Have you determined whether or not
> you wish to have a trial by jury or a trial
> by a judge?
>
> [APPELLANT]:  Trial by judge.

> [JUDGE]:  And you waive your right to a trial by jury?
>
> [APPELLANT]:  Yes.
>
> [JUDGE]:  Does the Commonwealth waive?
>
> [PROSECUTOR]:  The Commonwealth waives trial by jury.
>
> [JUDGE]:  Do you understand the questions that I've asked you?
>
> [APPELLANT]:  Yes, I do.
>
> [JUDGE]:  All right, sir.  We'll go ahead, and I'll hear the case, and we'll go ahead and proceed.

During the trial, appellant represented himself while his former court-appointed attorney sat in the back of the courtroom.  At the conclusion of the evidence, the trial judge convicted appellant of malicious wounding in violation of Code § 18.2-51, abduction in violation of Code § 18.2-47, and brandishing a firearm in violation of Code § 18.2-282.  Although appellant continued to represent himself at the sentencing hearing, the trial judge appointed counsel to represent appellant for purposes of this appeal.

## II.  Analysis

"In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defen[s]e."  U.S. Const. amend. VI.  As an essential means of securing due process, this right to the assistance of counsel "is a fundamental right of criminal defendants; it assures the

fairness, and thus the legitimacy, of our adversary process."

Kimmelman v. Morrison, 477 U.S. 365, 374 (1986).  Accordingly,

the Sixth Amendment guarantees a defendant a fair opportunity to

secure counsel of his own choice to represent him at trial on

criminal charges, Powell v. Alabama, 287 U.S. 45, 53 (1932), or

if a defendant is indigent, representation is made available to

him by the court.  See Gideon v. Wainwright, 372 U.S. 335 (1963);

see also Code § 19.2-157.[1]  The Sixth Amendment right to counsel

also "implicitly embodies a 'correlative right to dispense with a

lawyer's help.'"  Faretta v. California, 422 U.S. 806, 814 (1975)

(quoting Adams v. United States ex rel. McCann, 317 U.S. 269, 279

(1942)).  To be valid, any such waiver must be the voluntary act

of the defendant and must constitute a knowing and intelligent

abandonment of a known constitutional right or privilege.

Edwards v. Arizona, 451 U.S. 477, 482 (1981).

Here, the record indisputably established that appellant

began the trial with a court-appointed attorney and that he did

_____

[1] Code § 19.2-157 provides as follows:

> Except as may otherwise be provided in
> §§ 16.1-266 through 16.1-268, whenever a
> person charged with a criminal offense the
> penalty for which may be death or
> confinement in the state correctional
> facility or jail, including charges for
> revocation of suspension of imposition or
> execution of sentence or probation, appears
> before any court without being represented
> by counsel, the court shall inform him of
> his right to counsel. The accused shall be
> allowed a reasonable opportunity to employ
> counsel or, if appropriate, the statement of
> indigence provided for in § 19.2-159 may be
> executed.

not ask the judge to discharge his attorney.  Further, he clearly did not ask to be allowed to represent himself.  Indeed, when the judge asked if he was ready for trial, appellant's responses, "Without an attorney?" and then, "No, I'm not," were clear assertions that he wanted an attorney to represent him.  He was therefore constitutionally entitled to the assistance of an attorney at his trial.  See United States v. Phifer, 511 F.2d 960 (4th Cir. 1975).

Alternatively, the Commonwealth implies that although appellant may not have expressed a choice to proceed pro se, in effect, he constructively waived his right to counsel.  We disagree.  Indeed, we reject the suggestion that a waiver of the right to counsel can be less than knowing and the product of an intelligent decision.  Nevertheless, we are mindful that the Sixth Amendment right to counsel, while fundamental, is not a right without limitation.  Specifically, it is not a right subject to endless abuse by a defendant.  Instead, the right is qualified in its exercise and merely affords a defendant an absolute right to a "fair opportunity" to representation by counsel.  Sampley v. Attorney General of North Carolina, 786 F.2d 610, 613 (4th Cir. 1986).  This limitation derives from the important and valid state interest in proceeding with prosecutions in an orderly and expeditious manner, taking into account the practical difficulties of "'assembling the witnesses, lawyers, and jurors at the same place at the same time,'" as well as the concerns and interests of the victims, witnesses and

general public, and the appropriate use of judicial resources. Id. (quoting Morris v. Slappy, 461 U.S. 1, 11 (1983)); see also Morris, 461 U.S. at 14-15; Green v. Commonwealth, 211 Va. 727, 728, 180 S.E.2d 531, 532 (1971).

Thus, although a valid waiver of a defendant's fundamental right to counsel must be voluntary and constitute a knowing, intelligent abandonment of the right, Edwards, 451 U.S. at 482, it

> "does not grant [a] defendant license to play a cat and mouse game with the court, or by ruse or stratagem fraudulently seek to have the trial judge placed in a position where, in moving along the business of the court, the judge appears to be arbitrarily depriving the defendant of counsel."

United States v. Hughes, 191 F.3d 1317, 1323 (10th Cir. 1999) (quoting United States v. Allen, 895 F.2d 1577, 1578 (10th Cir. 1990)).

Accordingly, the question of whether a fair opportunity to secure representation has been accorded to a defendant becomes a case specific inquiry. For example, the Fourth Circuit has found that, once provided with a fair opportunity to secure counsel, the conduct of a defendant can constitute a "constructive discharge" of counsel. See United States v. Attar, 38 F.3d 727, 735 (4th Cir. 1994) ("[A] court might properly find that the belated creation by a defendant of an inextricable ethical predicament for his counsel constitutes . . . a constructive discharge of counsel."). Further, it is clear that certain dilatory conduct on the part of a defendant may also be properly viewed as an effective de facto waiver of Sixth Amendment

protections.  See Sampley, 786 F.2d at 613 ("[A] defendant has no constitutional right to dictate the time, if ever, at which he is willing to be tried by simply showing up without counsel, or with allegedly unsatisfactory counsel, whenever his case is called for trial, or by objecting that counsel then retained or assigned is not presently 'counsel of his choice.'" (citing Ungar v. Sarafite, 376 U.S. 575 (1964); Morris, 461 U.S. at 103)); see also Lemke v. Commonwealth, 218 Va. 870, 874-75, 241 S.E.2d 789, 791-92 (1978); Watkins v. Commonwealth, 174 Va. 518, 523, 6 S.E.2d 670, 672 (1940); Bolden v. Commonwealth, 11 Va. App. 187, 190-91, 397 S.E.2d 534, 536-37 (1990).

It logically follows that such conduct may operate as a constructive discharge of counsel whether retained or appointed, or a de facto waiver of the right to be represented by such counsel.  In either case, a trial court is not bound by constitutional mandate to appoint another attorney, or provide the defendant with an additional opportunity to secure counsel.  Instead, courts are accorded wide discretion in deciding whether to grant continuances to enable a defendant to secure new counsel.  See Sampley, 786 F.2d at 613 ("[t]he constitutional right is probably best stated as a limit on trial court discretion: that discretion only exceeds its constitutional bounds when it is exercised to deny a continuance on the basis of an 'unreasoning and arbitrary "insistence upon expeditiousness in the face of a justifiable request for delay"'" (quoting Ungar, 376 U.S. at 589)).

Nevertheless, contrary to the argument of the Commonwealth, the record here does not demonstrate that appellant's conduct

constituted a constructive discharge of counsel or a de facto waiver of counsel.  Instead, the record reflects only relief of counsel by the trial court following an unsupported request to withdraw.  We hold that in order to establish a constructive discharge or a de facto waiver of counsel by conduct, the record should demonstrate adequate procedural safeguards.  Specifically, the record should reflect adherence to the statutory guidelines set forth in Code § 19.2-157 et seq., governing the right to counsel.

In this case, the trial court did not set forth the reasons for its determination that McNair waived his right to counsel. While a failure to explicitly address the basis for its conclusion that defendant constructively discharged counsel, or de facto waived the right to counsel, would not per se constitute reversible error, the better practice would be to produce a record which reflects that (1) the defendant placed his counsel in a position that precluded effective representation and thereby constructively discharged his counsel or (2) through his obstructionist behavior, dilatory conduct, or bad faith, the defendant de facto waived counsel.  Such a finding should be prefaced by the trial court's admonition to the defendant concerning his right to counsel, the perils of pro se representation, as well as an appropriate explanation of the charges and punishment at issue.  Additionally, the trial court's finding should include a specific recitation of how the defendant's conduct shows an unequivocal intent to relinquish or abandon his right to counsel, either as a constructive discharge of counsel or a de facto waiver of counsel.  See United States v.

<u>Gallop</u>, 838 F.2d 105, 109 (4th Cir. 1988); <u>see</u> <u>also</u> <u>People v.</u>
<u>Arguello</u>, 772 P.2d 87, 92–93 (Colo. 1989).[2]

As constitutional jurisprudence requires courts to indulge
every reasonable presumption against waiver of counsel, <u>Brewer v.</u>
<u>Williams</u>, 430 U.S. 387, 404 (1977), we do not find this record
sufficient to support the theory that appellant's conduct
constituted a constructive discharge of counsel or a <u>de</u> <u>facto</u>
waiver of representation by counsel.  Indeed, the record here
demonstrates no more than that the defendant was "difficult" and
did not believe his attorney was providing him with an adequate
defense.[3]  Moreover, we do not find that the statements of the
trial court constitute a sufficient factual finding that the
defendant's difficulty with his various attorneys amounted to a
pattern of conduct calculated to prevent his trial from ever
occurring.  Neither do we find the record sufficient to establish
appellant's voluntary, knowing and intelligent waiver of his
right to counsel, or a course of conduct evidencing the
constructive discharge of counsel or the <u>de</u> <u>facto</u> waiver of the
right to counsel.

_____

[2] We do not suggest, however, that a trial court's failure
to address every procedural guideline listed here would
necessarily have an effect on the efficacy of a defendant's
constructive discharge or <u>de</u> <u>facto</u> waiver in a given case.
However, compliance with these safeguards may be sufficient to
establish a <u>prima</u> <u>facie</u> case of constructive discharge, or a <u>de</u>
<u>facto</u> waiver of counsel.  See <u>Bolden</u>, 11 Va. App. at 193, 397
S.E.2d at 537-38.
[3] There is no evidence that anyone but the prosecutor wanted
the appellant to represent himself, nor was the trial court
obligated to remove appellant's fifth court-appointed counsel
simply because she was having difficulty with her client and
wanted to "protect" herself.

This record contains no explanation why the trial judge did not deny appellant's attorney's motion to withdraw on the day of trial and order her to continue with her representation of appellant. Despite her disagreement with appellant about the evidence he wanted to present, appellant's attorney indicated she was prepared for trial. Although her interest in "protect[ing] [her]self" had been served by her motion on the record, appellant's right to the assistance of an attorney was a separate matter.

Accordingly, on this record, we find that there was no de facto waiver of appellant's right to a fair opportunity to be represented by counsel, nor does the record support a finding that the defendant's articulated dissatisfaction with the conduct of his defense constituted a constructive discharge of his attorney.

Finally, although the Commonwealth notes that appellant "correctly asserts that he was required to proceed 'pro se,'" the Commonwealth argues that appellant's counsel, nevertheless, remained in the courtroom and, therefore, appellant had "standby counsel." However, the record proves otherwise.

The trial judge, without qualification, granted appellant's attorney's motion to withdraw. Even if she remained in the back of the courtroom, she was not authorized or directed to assist appellant. Her mere presence in the courtroom provided no benefit to appellant. "Because the right to counsel is so

fundamental to a fair trial, the Constitution cannot tolerate trials in which counsel, though present in name, is unable to assist the defendant to obtain a fair decision on the merits." Evitts v. Lucy, 469 U.S. 387, 395 (1985). "The guarantee of counsel 'cannot be satisfied by mere formal appointment.'" Id. (citation omitted). Therefore, regardless of the presence of appellant's former attorney in the courtroom, the record establishes that the trial judge unconditionally granted her motion to withdraw and required appellant to proceed pro se without the assistance of his attorney.

"When a State obtains a criminal conviction through . . . a trial [in which a defendant is denied the assistance of an attorney], it is the State that unconstitutionally deprives the defendant of his liberty." Cuyler v. Sullivan, 446 U.S. 335, 343 (1980). Although the Commonwealth has a valid interest in an orderly and expeditious prosecution, in this case, we hold that the trial judge exhibited "an unreasoning and arbitrary 'insistence upon expeditiousness . . .' [and, therefore,] violate[d] [appellant's] right to the assistance of counsel." Morris, 461 U.S. at 11-12 (citation omitted).

Reversed and remanded.

Benton, J., with whom Elder, J., joins, concurring.

I concur in the judgment reversing the convictions and remanding for a new trial. Although I agree that McNair did not constructively discharge his attorney, I do not join in the majority opinion because I do not believe that a defendant may "de facto" or constructively waive his Sixth Amendment right to counsel. Those concepts were not argued by either party, and they detract from the usual Sixth Amendment analysis. For the reasons I previously stated in McNair v. Commonwealth, 35 Va. App. 587, 596-604, 546 S.E.2d 756, 760-64 (2001) (Benton, J., dissenting), I would reverse the convictions and remand for a new trial.

                                    Tuesday        31st

        July, 2001.


Antwoin Renard McNair,                                        Appellant,

  against        Record No. 1106-00-1
                 Circuit Court Nos. CR99-3136 through CR99-3138

Commonwealth of Virginia,                                     Appellee.


                Upon a Petition for Rehearing En Banc

    Before Chief Judge Fitzpatrick, Judges Benton, Willis, Elder,
     Bray, Annunziata, Bumgardner, Frank, Humphreys, Clements and
                                Agee

        On June 21, 2001 came Antwoin Renard McNair, by

court-appointed counsel, and filed a petition praying that the

Court set aside the judgment rendered herein on June 5, 2001,

and grant a rehearing en banc thereof.

        On consideration whereof, the petition for rehearing

en banc is granted, the mandate entered herein on June 5, 2001

is stayed pending the decision of the Court en banc, and the

appeal is reinstated on the docket of this Court.

        The parties shall file briefs in compliance with Rule

5A:35. The appellant shall attach as an addendum to the opening

brief upon rehearing en banc a copy of the opinion previously

rendered by the Court in this matter. It is further ordered that

the appellant shall file with the clerk of this Court twelve additional copies of the appendix previously filed in this case.

A Copy,

Teste:

Cynthia L. McCoy, Clerk

By:

Deputy Clerk

COURT OF APPEALS OF VIRGINIA


Present: Judges Benton, Bray and Frank
Argued at Chesapeake, Virginia


ANTWOIN RENARD McNAIR

OPINION BY
v.    Record No. 1106-00-1        JUDGE ROBERT P. FRANK
JUNE 5, 2001
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Frederick H. Creekmore, Judge

Randolph D. Stowe for appellant.

(Mark L. Earley, Attorney General; Donald E.
Jeffrey, III, Assistant Attorney General, on
brief), for appellee.


Antwoin Renard McNair (appellant) was convicted in a bench

trial of malicious wounding in violation of Code § 18.2-51,

abduction in violation of Code § 18.2-47.1, and brandishing a

firearm in violation of Code § 18.2-282.  On appeal, he contends

the trial court violated his right to counsel by requiring him

to proceed to trial without counsel.  Finding no error, we

affirm the convictions.

I.   BACKGROUND

On October 29, 1999, appellant's case was called for trial.

Appellant, through his court-appointed counsel, Lesa J. Henderson,

moved for a continuance, citing insufficient time to prepare for

trial.  Appellant also personally explained to the court his need

for a continuance, representing that his attorney had not met with

him an adequate number of times to prepare his defense.  Appellant indicated he needed documents from the Norfolk school system and the Internal Revenue Service to impeach the victim's credibility.

The Commonwealth objected to a continuance, advising the trial court that it took six preliminary hearing dates, with three other lawyers, to conclude the preliminary hearing in the case.

Appellant's motion for a continuance was denied, and appellant was arraigned.  During the trial court's colloquy, appellant said he did not have enough time to discuss his case with counsel.  He said he had additional witnesses whose names he did not know and that he was not ready for trial.  The trial court stated, "The Court, however, having looked at the history in this case and your previous involvement with other lawyers, I'm not sure you will ever be ready for this case."

Appellant then requested a jury trial.  The trial court admonished appellant that he would be tried by a jury even if he later waived his right to a jury trial.  The trial court stated, "I'm not going to allow you to use the request for a jury trial as a means of stalling."  The trial court then continued the case to December 6, 1999.  The trial court advised appellant to cooperate with his attorney and stated that it would not grant further continuances.

On November 23, 1999, a hearing was conducted on Ms. Henderson's motion to withdraw as appellant's counsel.  After

representing that she had met with appellant at least four times, Ms. Henderson stated:

> I feel that the communications are irretrievable, and he does not take my advice, and I feel I should withdraw . . . . The problem is he feels that he knows best, and he will not listen to me. I cannot -- I cannot even talk to him at this point. It is totally shut down . . . . [T]here is a barrier that we have reached.

The trial court granted Ms. Henderson's motion to withdraw and appointed Sharon Mason to represent appellant. The cases were continued to January 25, 2000 with a jury.

A suppression hearing was set for January 14, 2000. After the trial court began to hear the evidence, the court and counsel agreed to continue the motion and reserve appellant's right to move for suppression during the course of the trial, if the need arose.

The trial began on March 3, 2000. Prior to arraignment, appellant claimed that necessary evidence had not been produced. The purported evidence included documents which he alleged would have established that appellant's wife, the alleged victim, had made false statements on previous occasions in matters not related to the charges against appellant. Appellant also expressed his desire to offer proof as to the "manipulation" of his daughter, who was a witness for the prosecution. Appellant contended that this evidence, and other information, would prove that his wife

was a liar. He wanted to use this evidence to show "what type of person we are dealing with."

The Commonwealth objected to the use of individual acts of dishonesty to impeach the victim. Appellant's counsel indicated the school records appellant requested had been subpoenaed and were in the court's file. Counsel further represented that appellant's sister was bringing alleged forged tax returns to court. These documents were the same documents appellant referred to in his motion to continue on October 29, 1999.

The trial court indicated it would reserve ruling on the admissibility of the victim's "bad conduct" until the evidence was offered by appellant.

Appellant was arraigned and pled not guilty. During the trial court's colloquy, appellant said he had not had enough time to discuss all possible defenses with his attorney. Appellant again spoke of the school records and the tax forms.

At that time, Ms. Mason moved to withdraw as counsel. She explained:

> I have done everything from A to Z to work with Mr. McNair. Quite frankly, I have advised him up and down and all around. He doesn't hear the advice. He doesn't want to hear the advice. I have jumped through all of the hoops that I don't think should be jumped through at this point based on the information that he's telling the court. I'm walking into it. At this point, I have to protect myself. At this point, I'm going to make a motion to withdraw as counsel.

Again, appellant spoke of his need for the same documents. The trial court replied, "It's been objected to. It's a written document. I can't accept it if it's objected to, but you tell me what you want to tell me in response to my question." Again, appellant stated, "I'm trying to show you by showing you the information that I have here that she's capable of lying under oath . . . ."

The trial court reiterated that if appellant had evidence that his daughter's testimony was being "manipulated," the court would hear the evidence and then rule on its admissibility.

At that point, the trial court allowed Ms. Mason to withdraw as appellant's counsel, stating:

> I'm going to do this, Ms. Mason, I'm going to grant your motion to be released as counsel. I would ask you to standby because he has some questions that he would need to seek your advice on, and we'll go ahead and proceed pro se based on the evidence that I have before me. She's your fifth attorney, and we have to get the matter heard, and we can't keep going through different attorneys, and it sounds like to me that she's made a reasonable effort to provide you with a defense. If you have rejected that, then we have to get the case pro se.

After Ms. Mason was allowed to withdraw, the following exchange took place.

> THE COURT: And are you ready for trial today?
>
> THE DEFENDANT: Without an attorney?

THE COURT: Yes, sir.

THE DEFENDANT: No, I'm not.

The trial court then proceeded to try appellant without counsel. The record does not indicate whether Ms. Mason had a further role in the case. In fact, according to appellant's trial representation, not contradicted by the prosecution or the court, Ms. Mason's "standby" role was limited to sitting in the back of the courtroom, "without advising [appellant] of anything."

The facts of the actual offenses are not relevant to our analysis and will not be included in this opinion. Appellant was convicted of the offenses charged.

## II. ANALYSIS

> "The right to have the assistance of counsel is a 'fundamental' right, although such right is not explicitly set out in the Constitution of Virginia." Commonwealth v. Edwards, 235 Va. 499, 505, 370 S.E.2d 296, 298-99 (1988); see also Browning v. Commonwealth, 19 Va. App. 295, 298, 452 S.E.2d 360, 362 (1994) (finding that the Sixth Amendment right to counsel is a fundamental right guaranteed to an accused by the Bill of Rights of the Virginia Constitution).

Webb v. Commonwealth, 32 Va. App. 337, 348, 528 S.E.2d 138, 143 (2000).

"'The right to counsel which is guaranteed by the Sixth Amendment to the Federal Constitution and made applicable to the States through the Fourteenth Amendment includes the right to

effective assistance of counsel.'"  Curo v. Becker, 254 Va. 486, 491, 493 S.E.2d 368, 370 (1997) (quoting Virginia Dep't. of Corrections v. Clark, 227 Va. 525, 533, 318 S.E.2d 399, 403 (1984)).  "However, this right is a qualified right which is limited by a 'countervailing state interest . . . in proceeding with prosecutions on an orderly and expeditious basis.'"  Bolden v. Commonwealth, 11 Va. App. 187, 190, 397 S.E.2d 534, 536 (1990) (quoting Paris v. Commonwealth, 9 Va. App. 454, 460, 389 S.E.2d 718, 721-22 (1990)).

> In discussing the denial of an accused's sixth amendment right to counsel, the Supreme Court has held that "[t]he burden is on the Commonwealth to prove waiver of the right to counsel by clear, precise and unequivocal evidence."  Van Sant v. Commonwealth, 224 Va. 269, 273, 295 S.E.2d 883, 885 (1982) (citing Lemke v. Commonwealth, 218 Va. 870, 873, 241 S.E.2d 789, 791 (1978)).  The Supreme Court of the United States said in Johnson v. Zerbst, 304 U.S. 458 (1938):  "It has been pointed out that 'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights and that we 'do not presume acquiescence in the loss of fundamental rights.'"  Id. at 464-65 (quoting Ohio Bell Telephone Co. v. Public Utilities Commission, 301 U.S. 292, 307 (1937)).  "Presuming waiver from a silent record is impermissible.  The record must show that an accused was offered counsel but intelligently and understandingly rejected the offer.  Anything less is not waiver."  Carnley v. Cochran, 369 U.S. 506, 516 (1962).

Sargent v. Commonwealth, 5 Va. App. 143, 149, 360 S.E.2d 895, 898-99 (1987).

In Bolden, 11 Va. App. 187, 397 S.E.2d 534, the trial court gave Bolden in excess of one month to retain counsel. During that time, he was granted two continuances so he could obtain counsel. Id. at 189-90, 397 S.E.2d at 535-36. The trial court offered to provide court-appointed counsel, and Bolden refused. Id. at 190, 397 S.E.2d at 536. The trial court told Bolden that if he appeared on the trial date without counsel, he would be tried without counsel. Id. at 189, 397 S.E.2d at 536. Bolden appeared on the date of trial without counsel and requested another continuance. Id. at 190, 397 S.E.2d at 536. The trial court denied the motion, and Bolden was tried without counsel. Id. We held, "[T]he trial court reasonably concluded that Bolden's failure to have counsel on [the trial date] was the result of dilatory conduct on his part and not due to any lack of opportunity to obtain counsel." Id. at 191, 397 S.E.2d at 537.

We wrote:

> Because a defendant's assertion of his right to counsel may conflict with the government's right to an orderly and expeditious prosecution, trial courts are often faced with the dilemma of choosing between these competing interests. Under certain circumstances, the trial court is entitled to conclude that the defendant has actually waived his right to counsel and thus can require that the defendant stand trial without the assistance of counsel. However, in these situations, the burden is on the Commonwealth to prove "by clear, precise and unequivocal evidence" that the defendant did actually waive his right to

counsel. _Lemke v. Commonwealth_, 218 Va. 870, 873, 241 S.E.2d 789, 791 (1978). "'The record must show that an accused was offered counsel but intelligently and understandingly rejected the offer.'" _Sargent v. Commonwealth_, 5 Va. App. 143, 149, 360 S.E.2d 895, 899 (1987) (quoting _Carnley v. Cochran_, 369 U.S. 506, 516 (1962)).

_Id._ at 190-91, 397 S.E.2d at 536.

In _Lemke_, 218 Va. 870, 241 S.E.2d 789, the Supreme Court of Virginia held that the trial court erred in requiring Lemke to proceed to trial without counsel. Lemke had appealed her district court conviction to the circuit court. _Id._ at 871, 241 S.E.2d at 790. She signed an appeal form indicating that she was obligated to hire an attorney promptly and that her "'failure to employ an attorney until just before the trial is not grounds for a continuance.'" _Id._ at 871, 241 S.E.2d at 790. Lemke attempted to hire counsel several days prior to her trial in the circuit court but was unsuccessful. _Id._ The trial court denied her motion for a continuance and tried her without counsel. _Id._ The record did not indicate whether the trial court had determined that Lemke was ineligible for court-appointed counsel. _Id._ at 873, 241 S.E.2d at 791. The Supreme Court wrote, "[H]er actions in twice approaching the attorney of her choice were not actions characteristic of a person who did not wish to be represented at trial." _Id._ at 874, 241 S.E.2d at 791.

In finding the trial court committed error, the Supreme

Court held:

> Trial courts are fully justified in taking stern measures to eliminate the frustrations of unnecessary or intentional delays caused by defendants in criminal appeals from the General District Courts. Such defendants must not be permitted to trifle with the courts or impede the administration of justice . . . .
>
> Nor does the evidence establish that Lemke acted in bad faith in appearing for trial without an attorney and moving for a continuance. Although the representations made to the court by the attorney whom she sought to employ were not entirely consistent with Lemke's own statements, they showed that she had made an effort during the week before trial to obtain the services of counsel. It thus appears that she wished to be represented by an attorney.

Id. at 874, 241 S.E.2d at 791-92.

In Sampley v. Attorney Gen. of North Carolina, 786 F.2d 610

(4th Cir. 1986), the Fourth Circuit Court of Appeals wrote:

> Obviously a defendant has no constitutional right to dictate the time, if ever, at which he is willing to be tried by simply showing up without counsel, or with allegedly unsatisfactory counsel, whenever his case is called for trial, see Ungar v. Sarafite, 376 U.S. 575, 84 S. Ct. 841, 11 L.Ed.2d 921 (1964), or by objecting that counsel then retained or assigned is not presently "counsel of his choice," see Morris v. Slappy, 461 U.S. 1, 103 S. Ct. 1610, 75 L.Ed.2d 610 (1983) . . . .
>
> When a defendant does request a continuance on the basis, as here, that he does not have counsel to represent him, the court requested to grant the continuance must therefore make a judgment whether this

> results from the lack of a fair opportunity
> to secure counsel or rather from the
> defendant's unjustifiable failure to avail
> himself of an opportunity fairly given. In
> making this judgment, the court is
> necessarily entitled to take into account
> the countervailing state interest in
> proceeding on schedule.

Id. at 613.

We reject appellant's contention that he was deprived of his Sixth Amendment right to counsel. At the time of the trial on March 6, 2000, appellant's case had been pending for eleven months. The preliminary hearing was set for six different dates before it was held on September 16, 1999. Appellant had four attorneys through the preliminary hearing, one retained and three appointed. The trial date of March 6, 2000 was the third trial date set in the circuit court. Each of the two attorneys who withdrew as counsel in the circuit court complained of appellant's lack of cooperation and failure to heed their advice. The trial court, upon allowing Lesa Henderson to withdraw, said, "I'm not sure you will ever be ready for this case." Upon allowing Sharon Mason to withdraw, the trial court found that counsel made a "reasonable effort" to provide appellant with a defense and stated, "If you have rejected that, we have to get the case pro se."

Appellant's failure to cooperate with multiple attorneys and his dilatory conduct are clear from the record. Because of appellant's tactics, the trial court properly concluded that

appellant waived his right to counsel.  Appellant was offered and received counsel on at least five occasions and chose not to cooperate or communicate with them.  As stated in <u>Bolden</u>, the trial court recognized the "government's right to an orderly and expeditious prosecution."  It was evident that appellant simply did not want to be tried and failed to cooperate with counsel as a tactic to avoid trial.  The record indicates appellant's circuit court counsel diligently attempted to represent him but his uncooperative behavior prevented their efforts.  The record further indicates the trial court made every reasonable effort to honor appellant's right to counsel.

We conclude that the Commonwealth proved by clear, precise and unequivocal evidence that appellant waived his right to counsel.  Therefore, for these reasons, we affirm the judgment of the trial court.

<u>Affirmed.</u>

Benton, J., dissenting.

     "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defen[s]e."  U.S. Const. amend. VI.  More than a half century ago, the Supreme Court held that "[t]he Sixth Amendment stands as a constant admonition that if the constitutional safeguards it provides be lost, justice will not 'still be done.'"  Johnson v. Zerbst, 304 U.S. 458, 462 (1938).  Later, in the seminal case applying the Sixth Amendment, the Court held that the right to the assistance of counsel "'is one of the safeguards of the Sixth Amendment deemed necessary to insure fundamental human rights of life and liberty.'"  Gideon v. Wainwright, 372 U.S. 335, 343 (1963) (citation omitted).

> Gideon rested on the "obvious truth" that lawyers are "necessities, not luxuries" in our adversarial system of criminal justice. "The very premise of our adversary system of criminal justice is that partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free."  The defendant's liberty depends on his ability to present his case in the face of "the intricacies of the law and the advocacy of the public prosecutor;" a criminal trial is thus not conducted in accord with due process of law unless the defendant has counsel to represent him.

Evitts v. Lucey, 469 U.S. 387, 394 (1985) (citations omitted).

As an essential means of securing due process, the right to the assistance of counsel "is a fundamental right of criminal

defendants; it assures the fairness, and thus the legitimacy, of our adversary process." Kimmelman v. Morrison, 477 U.S. 365, 374 (1986). Apparently, for reasons of expediency, the trial judge overlooked these principles in McNair's trial.

When the judge began McNair's trial and asked if the parties were ready to proceed, McNair's court-appointed attorney indicated she was ready for trial. Before the arraignment, however, she said McNair wanted to address the judge "prior to starting the trial." McNair made extensive comments to the judge about the absence of information he believed was necessary to be produced for his defense "so that [he] could get a fair trial" and about his objection to the prosecutor using his thirteen-year-old daughter as a witness. Reiterating these issues during the ensuing arraignment, McNair indicated that "information for [his] defense is not here" and that he had not had sufficient time to discuss his defenses with his attorney. Disagreeing, McNair's attorney informed the judge that she had sought to give advice to McNair, that he did not want to accept her advice, and that she had "jumped through all of the hoops" McNair imposed on her. She then said: "At this point, I have to protect myself, . . . I'm going to make a motion to withdraw as counsel." The prosecutor immediately "ask[ed] if the Court would [. . .] if [McNair] could proceed pro se and leave [McNair's attorney] as advice counsel."

When the judge asked for McNair's "response" to these matters, McNair again indicated he needed other information to prove his wife was "capable of lying under oath." The trial judge then ascertained from McNair's appointed attorney that she had discussed the case with McNair, that she had advised him of the elements of the offense the prosecutor had to prove, and that she had consulted with McNair on numerous occasions. The judge granted McNair's attorney's motion to withdraw without qualification. Proceeding with the arraignment, the judge asked the following:

> [JUDGE]: The Court has heard what you said. That matter is on the record. At this point, I'm not going to deny [your daughter] an opportunity to testify if the Commonwealth presents her as a witness.
>
> Have you entered your plea of not guilty freely and voluntarily?
>
> [McNAIR]: Yes.
>
> [JUDGE]: And are you ready for trial today?
>
> [McNAIR]: Without an attorney?
>
> [JUDGE]: Yes, sir.
>
> [McNAIR]: No, I'm not.
>
> [JUDGE]: Have you determined whether or not you wish to have a trial by jury or a trial by a judge?
>
> [McNAIR]: Trial by judge.
>
> [JUDGE]: And you waive your right to a trial by jury?
>
> [McNAIR]: Yes.

[JUDGE]:  Does the Commonwealth waive?

[PROSECUTOR]:  The Commonwealth waives trial by jury.

[JUDGE]:  Do you understand the questions that I've asked you?

[McNAIR]:  Yes, I do.

[JUDGE]:  All right, sir.  We'll go ahead, and I'll hear the case, and we'll go ahead and proceed.

This record does not establish that McNair declined to be represented by an attorney.  At no time did he even intimate that he wanted to proceed without an attorney.  Indeed, when the judge asked if he was ready for trial, McNair's responses, "Without an attorney?" and then "No, I'm not," are clear acknowledgments that he wanted an attorney to represent him.  Furthermore, as the Supreme Court held in Carnley v. Cochran, 369 U.S. 506, 513 (1962), "it is settled that where the assistance of counsel is a constitutional requisite, the right to be furnished counsel does not depend on a request."  The record indisputably established that McNair began the trial with a court-appointed attorney and did not ask to be allowed to represent himself.  He was therefore constitutionally entitled to the assistance of an attorney at his trial.

The trial judge eviscerated McNair's Sixth Amendment right to counsel by releasing his attorney merely because McNair's attorney stated on the record "to protect [her]self" that McNair was a difficult client to represent and moved to "withdraw as

counsel."  The right to the assistance of an attorney is not a mere formalism that can be discarded merely because a defendant proves difficult.  Moreover, the trial judge compounded his error by granting the prosecutor's request to require McNair "to proceed pro se."  In so doing, the trial judge completely disregarded the Supreme Court's long standing ruling that the Sixth Amendment "embodies a realistic recognition of the obvious truth that the average defendant does not have the professional legal skill to protect himself when brought before a tribunal with power to take his life or liberty, wherein the prosecution is presented by experienced and learned counsel."  Johnson, 304 U.S. at 462-63.  When the trial judge required McNair to defend himself without the assistance of his attorney, the trial judge gave no deference to these principles.  Even if McNair disagreed with his attorney concerning the evidence to be proved, he, like every "person charged with a felony in a state court has an unconditional and absolute constitutional right to a lawyer." Boyd v. Dutton, 405 U.S. 1, 2 (1972) (citing Gideon).

I disagree with the majority opinion's holding that McNair waived his right to the assistance of an attorney.  Although an accused may waive that right, the burden is on the Commonwealth to prove a waiver.  Brewer v. Williams, 430 U.S. 387, 404 (1977).  To meet that burden, the record must establish that such a waiver was voluntarily, knowingly, and intelligently made.  Faretta v. California, 422 U.S. 806, 835 (1975).  In our

review of that issue, "the question of waiver [is to be determined] as a matter of federal constitutional law." Brewer, 430 U.S. at 404. Under that standard, we are required to apply the following rules:

> [It is] incumbent upon the State to prove "an intentional relinquishment or abandonment of a known right or privilege." . . . [T]he right to counsel does not depend upon a request by the defendant, and . . . courts [must] indulge in every reasonable presumption against waiver. This strict standard applies equally to an alleged waiver of the right to counsel whether at trial or at a critical stage of pretrial proceedings.

Id. (citations omitted). Moreover, when the Commonwealth relies upon such a waiver, it "must prove [the] essentials [of the waiver] by 'clear, precise and unequivocal evidence . . . [, which] must not leave the matter to mere inference or conjecture but must be certain in every particular.'" Church v. Commonwealth, 230 Va. 208, 215, 335 S.E.2d 823, 827-28 (1985) (citation omitted).

McNair's "actions . . . were not actions characteristic of a person who did not wish to be represented at trial." Lemke v. Commonwealth, 218 Va. 870, 874, 241 S.E.2d 789, 791 (1978). Although the majority opinion relies upon Bolden v. Commonwealth, 11 Va. App. 187, 397 S.E.2d 534 (1990), and Sampley v. Attorney Gen. of North Carolina, 786 F.2d 610 (4th Cir. 1986), McNair, unlike those defendants, did not "appear

. . . [at trial] without counsel . . . [as a] result of dilatory conduct on his part," Bolden, 11 Va. App. at 191, 397 S.E.2d at 537, and did not tell the trial judge "that he would represent himself." Sampley, 786 F.2d at 612. Thus, as in Lemke, this is not a case of "failure by one who is financially able to do so to employ counsel within a reasonable time," 218 Va. at 873, 241 S.E.2d at 791, but, rather, is a case of one who "wished to be represented by an attorney." Id. at 874, 241 S.E.2d at 792. The record clearly proved McNair came to trial with an attorney and expected to be represented by her at trial.

"A valid waiver of sixth amendment counsel must be the voluntary act of the defendant free of coercion, physical or psychological, subtle or overt, [which means] the defendant must realize that his or her actions are a waiver of a constitutional privilege." United States v. Clements, 713 F.2d 1030, 1035 (4th Cir. 1983) (citation omitted). The trial judge did not discuss with McNair the right to an attorney, made no inquiry of McNair, gave no warnings, and made no findings on the record.

> [The trial judge's actions were]
> insufficient to ensure that [McNair]
> understood that he was undertaking a complex
> and sophisticated role, the performance of
> which normally requires a high level of
> professional training and competence. [The
> judge] failed to warn [McNair] that if he
> rejected professional assistance, he would
> be responsible for the adequacy of his
> defense and would suffer the consequences of
> any inadequacy.

Kinard v. Commonwealth, 16 Va. App. 524, 527, 431 S.E.2d 84, 86 (1993).

By ignoring McNair's express statement that he did not want to proceed without an attorney, the trial judge effectively denied McNair's right to an attorney to the same extent as if he had ruled explicitly that McNair was not entitled to be represented by an attorney. Even in circumstances where "an accused is informed of his right of counsel and expresses a desire to waive such right [,that] is not by itself considered to be an effective waiver [because it] is fundamental that the record show that an accused was offered counsel and that he intelligently and understandingly rejected the offer." Miller v. Maryland, 577 F.2d 1158, 1161 (4th Cir. 1978).

This record contains no explanation why the trial judge did not deny McNair's attorney's motion to withdraw and order her to continue with the trial. Despite her disagreement with McNair about the evidence he wanted proved, she indicated she was prepared for trial. Although her interest had been served by her motion on the record "to protect [her]self," McNair's right to the assistance of an attorney was a separate matter. "A finding of waiver of counsel cannot be made on the basis of a simple inquiry into past events: 'the question of waiver [is] not a question of historical facts, but one which . . . requires "application of constitutional principles to the facts as found."'" Clements, 713 F.2d at 1035 (citations omitted).

It has been pointed out that "courts indulge
every reasonable presumption against waiver"
of fundamental constitutional rights and
that we "do not presume acquiescence in the
loss of fundamental rights."

    *     *     *     *     *     *     *

    The constitutional right of an accused to
be represented by counsel invokes, of
itself, the protection of a trial court, in
which the accused -- whose life or liberty
is at stake -- is without counsel.  This
protecting duty imposes the serious and
weighty responsibility upon the trial judge
of determining whether there is an
intelligent and competent waiver by the
accused.

Johnson, 304 U.S. at 464-65 (footnotes omitted).  Waiver of

McNair's Sixth Amendment right to assistance of an attorney may

be found only if the evidence shows "that [he] was offered

counsel but intelligently and understandingly rejected the

offer."  Carnley, 369 U.S. at 516.  As the Supreme Court noted:

"Anything less is not waiver."  Id.

    Although the Commonwealth notes that McNair "correctly

asserts that he was required to proceed 'pro se,'" the

Commonwealth still argues that McNair's counsel remained in the

courtroom and, therefore, McNair had "standby counsel."  The

simple, straightforward answer to this argument is that the

record proves otherwise.  The trial judge, without

qualification, granted McNair's attorney's motion to withdraw.

Even if she remained in the back of the courtroom, she was not

authorized to assist McNair.  It also bears repeating that "'the

constraint laid by the [Sixth] Amendment upon the . . . courts

expresses a rule . . . fundamental and essential to a fair

trial, and . . . to due process of law.'" Gideon, 372 U.S. at

340 (citation omitted).  Her mere presence in the courtroom

provided no benefit to McNair.  "Because the right to counsel is

so fundamental to a fair trial, the Constitution cannot tolerate

trials in which counsel, though present in name, is unable to

assist the defendant to obtain a fair decision on the merits."

Evitts, 469 U.S. at 395.  The Supreme Court could not have been

clearer when it said "the guarantee of counsel 'cannot be

satisfied by mere formal appointment.'"  Id.  Regardless of the

presence of McNair's former attorney in the courtroom, the trial

judge unconditionally granted her motion to withdraw and

required McNair to proceed pro se.

> The right to be heard would be, in many
> cases, of little avail if it did not
> comprehend the right to be heard by counsel.
> Even the intelligent and educated layman has
> small and sometimes no skill in the science
> of law.  If charged with crime, he is
> incapable, generally, of determining for
> himself whether the indictment is good or
> bad.  He is unfamiliar with the rules of
> evidence.  Left without the aid of counsel
> he may be put on trial without a proper
> charge, and convicted upon incompetent
> evidence, or evidence irrelevant to the
> issue or otherwise inadmissible.  He lacks
> both the skill and knowledge adequately to
> prepare his defense, even though he have a
> perfect one.  He requires the guiding hand
> of counsel at every step in the proceedings
> against him.  Without it, though he be not
> guilty, he faces the danger of conviction

because he does not know how to establish his innocence.

Powell v. Alabama, 287 U.S. 45, 68-69 (1932).

"When a State obtains a criminal conviction through . . . a trial [in which a defendant is denied the assistance of an attorney], it is the State that unconstitutionally deprives the defendant of his liberty."  Cuyler v. Sullivan, 446 U.S. 335, 343 (1980).  Although the Commonwealth has an interest in an orderly and expeditious prosecution, in this case, I would hold that the trial judge exhibited "an unreasoning and arbitrary 'insistence upon expeditiousness . . .' [and, therefore,] violate[d] the right to the assistance of counsel."  Morris v. Slappy, 461 U.S. 1, 11-12 (1983) (citation omitted).  This record establishes a clear violation by the Commonwealth of McNair's Sixth Amendment right to the assistance of an attorney at the trial where he was convicted.  Therefore, I would reverse the convictions and remand for a new trial.

I dissent.